IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YAODI HU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 844 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| PARK NATIONAL BANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Yaodi Hu has sued Park National Bank[1] ("Park National") for its alleged violations of the Right to Financial Privacy Act, 12 U.S.C. § 3402, and 42 U.S.C. § 1983. The case is before the Court on Park National's Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth in this Order, the motion is granted.

### Facts

Though plaintiff was told he must comply with Local Rule 56.1 and was warned of the consequences of failing to do so (*see* Notice Pro Se Litigant Opposing Summ. J.), he did not file a response to Park National's Local Rule 56.1(a) Statement. Thus, in accordance with the Local Rule, the Court deems plaintiff to have admitted all of the facts Park National asserts in it. *See* Local Rule 56.1.

On February 8, 2005, Hu, who ran a business called Piano Depot, received an email order from an unknown, foreign customer named Idowu Martins. (Def.'s LR 56.1(a) Stmt. ¶¶ 22-23.) The email

---

[1]Hu also asserted against Postmaster Nichols and the United States, which the Court has dismissed in a separate Order.

said that Martins wanted to purchase a $2,500.00 piano using U.S. postal money orders. (*Id.* ¶ 24.) Instead of sending money orders in the amount of the purchase price, however, Martins said he would send Hu orders for $5,000.00. (*Id.*) After Hu cashed them, the email explained, he should keep $2500.00 for the piano and wire the rest of the money to Martins. (*Id.* ¶ 25.)

On February 24, 2005, Hu received from Martins five money orders in the total amount of $5,000.00. (*Id.* ¶¶ 26-27.) Though he suspected they might be counterfeit, Hu deposited them into his Park National account the next day. (*Id.* ¶ 27.) On March 15, 2005, Hu withdrew $2,600.00 from that account. (*Id.* ¶ 29.)

On March 21, 2005, Hu received another email from Martins in which Martins said he needed an operation and had $15,000.00 in money orders to pay for it, but needed Hu's assistance to cash them. (*Id.* ¶¶ 32-33.) Martins told Hu that, after he cashed the orders, he should keep ten percent of the money for himself and send the rest to the doctor who was to perform the operation. (*Id.* ¶ 35.)

At the end of March 2005, Hu received ten more money orders, worth $10,000.00, from Martins. (*Id.* ¶ 36.) Martins told Hu to wire the cash from the orders to him immediately. (*Id.* ¶ 37.)

On April 1, 2005, Hu deposited three of the ten money orders into his Park National account, and went to the U.S. Post Office in Maywood, Illinois to cash the other seven. (*Id.* ¶¶ 38-39.) The Maywood Post Office did not have the enough money to cash the orders. (*Id.* ¶ 40.) Nonetheless, plaintiff insisted that Maywood Postmaster, Donald Nichols, examine the money orders. (*Id.* ¶ 41.) Nichols did so, and determined that they were counterfeit. (*Id.* ¶ 42.)

Hu told Nichols that he had previously received other money orders from the same person and had deposited them into his Park National account. (*Id.* ¶ 44.) Nichols said the other money orders might be counterfeit as well and told Hu that he would contact Park National to investigate. (*Id.* ¶¶ 45-47.)

2

Later that day, U.S. Postal Inspector Jeanne Lee requested and received from Park National the three money orders that Hu had deposited that day. (*Id.* ¶¶ 48-51.) Park National did not give Lee any other documents from or information about Hu's account. (*Id.* ¶¶ 61-63.)

Lee determined that the three money orders were counterfeit. (*Id.* ¶ 52.) As a result, Park National reversed the deposit entry that had been made to Hu's account for those orders. (*Id.* ¶ 53.) The same day, James Seidl, a Park National fraud officer, called Hu and told him that the money orders were counterfeit and Park National had reversed the deposit entry on his account. (*Id.* ¶ 56.)

On April 8, 2005, Park National was told by Bank One, the payor bank for the five money orders Hu had deposited in February 2005, that those orders were counterfeit. (*Id.* ¶ 64.) Park National, through Seidl, conducted its own investigation and reached the same conclusion. (*Id.* ¶¶ 66-68.) As a result, on April 28, 2005, Park National reversed the credit that had been made to Hu's account for the first five money orders, leaving a negative balance in his account. (*Id.* ¶ 65.)

Hu contends that Park National violated the Right to Financial Privacy Act when it gave Postal Inspector Lee the three money orders he had deposited on April 1, 2005 and is liable under 42 U.S.C. § 1983 for violating his Fourteenth Amendment rights by depriving him of credit for the five money orders he deposited in February 2005.

## Discussion

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the

3

non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I of the first amended complaint, Hu alleges that Park National violated the Right to Financial Privacy Act ("RFPA") by releasing his financial records to Postal Inspector Lee without following the dictates of the statute. (First Am. Compl. ¶¶ 21-22.) The RFPA generally prohibits financial institutions from disclosing their customers' financial records to the government unless the customer consents or the government's request meets certain criteria. *See* 12 U.S.C. § 3402. The statute contains a number of exceptions, however, one of which says:

> Nothing in this chapter shall preclude any financial institution . . . from notifying a Government authority that such institution . . . has information which may be relevant to a possible violation of any statute or regulation. Such information may include only the name or other identifying information concerning any individual, corporation, or account involved in and the nature of any suspected illegal activity. Such information may be disclosed notwithstanding any constitution, law, or regulation of any State or political subdivision thereof to the contrary. Any financial institution . . . making a disclosure of information pursuant to this subsection, shall not be liable to the customer under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the customer of such disclosure.

*Id.* § 3403(c).

The record establishes that the exception in section 3403(c) applies here. It is undisputed that the only documents from or information about Hu's account that Park National gave to Inspector Lee were the three money orders he had deposited on April 1, 2005. (Def.'s LR 56.1(a) Stmt. ¶¶ 38, 48-51, 61-63.) In other words, Park National notified a government authority – Inspector Lee – that it had information potentially relevant to a legal violation – the counterfeiting of money orders – and did so by disclosing only Hu's name and the nature of the suspected illegal activity – the counterfeit orders

4

themselves. Thus, the undisputed facts establish that Park National did not violate the RFPA. *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (holding that section 3403(c) exception applied when bank disclosed information at the government's request rather than its own initiative); *Miranda de Villalba v. Coutts & Co. (USA) Int'l*, 250 F.3d 1351, 1354 (11th Cir. 2001) (holding that bank's alleged disclosure to the government that a customer tried to make a $500,000.00 wire transfer was information about the nature of the suspected illegal activity [*i.e.*, money laundering] within the meaning of section 3403(c)); *Bailey v. U.S. Dep't of Agric.*, 59 F.3d 141, 143 (10th Cir. 1995) (holding that bank's disclosure of information in its "food stamp log relating the amount of certain cash withdrawals to contemporaneous coupon deposits could rightfully be disclosed as part of the bank's authority to reveal 'the nature of [the] suspected activity' [*i.e.*, food stamp fraud] under § 3403(c)."). Thus, Park National is entitled to judgment as a matter of law on Count I.

Hu fares no better with his other claim, that Park National is liable under 42 U.S.C. § 1983 for depriving him of credit for the five money orders he deposited in February 2005. (First Am. Compl. ¶ 24.) Section 1983 provides a remedy for people whose constitutional rights have been violated by a person acting "under color of . . . State [law]." 42 U.S.C. § 1983. "An action brought pursuant to § 1983 cannot lie against federal officers acting under color of federal law . . . ." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). Hu alleges that his rights were violated by actions Park National took in connection with Postmaster Nichols and Postal Inspector Lee, both of whom are federal actors. Thus, section 1983 does not apply.

Moreover, assuming *arguendo*, that Park National could be held liable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for depriving him of credit for the first group of money orders under color of federal law, there are no facts to suggest that

the Bank did any such thing. There record does not suggest that Park National reversed the credit for those orders at the behest of, due to coercion from, or even with the knowledge of, Nichols, Lee or any federal actor. On the contrary, it is undisputed that Park National reversed the credit for those orders only after Bank One advised it that the orders were counterfeit and Park National determined, through its own investigation and nearly a month after Inspector Lee's visit, that Bank One's conclusion was correct. (Def.'s LR 56.1(a) Stmt. ¶¶ 50, 64-68.) Accordingly, even if Hu could pursue a *Bivens* claim against Park National, an issue the Court does not decide, Park National would still be entitled to judgment on it.

## Conclusion

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to the claims plaintiff asserts against Park National Bank, which is entitled to judgment as a matter of law. Park National Bank's motion for summary judgment [doc. no. 71] is, therefore, granted and this case is terminated.

**SO ORDERED.** ENTERED: 5/08/08

HON. RONALD A. GUZMAN
United States District Judge

6